# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| COMMUNICATION ENHANCEMENT, LLC, | |
| Plaintiff/Counter Defendant, | No. C24-73-LTS-KEM |
| vs. | |
| IRMA M. KUCERA, Living Trust, et al., | **MEMORANDUM OPINION AND ORDER** |
| Defendants/Counter Claimants. | |

## I.    INTRODUCTION

This case is before me on cross-motions for summary judgment. Defendants Irma M. Kucera Living Trust (the Trust), along with Trustees Natalie Mass and Lorna Perkins and Richard and Jodi Hopper, have filed a motion (Doc. 53) for summary judgment as to all claims asserted by plaintiff Communication Enhancement, LLC (Communication Enhancement). Communication Enhancement has filed a resistance (Doc. 56) and defendants have filed a reply (Doc. 59). Communication Enhancement has also filed a motion (Doc. 54) for partial summary judgment on its claims of breach of contract and declaratory judgment, along with defendants' counterclaims. Defendants have filed a resistance (Doc. 57) and Communication Enhancement has filed a reply (Doc. 60). Oral argument is not necessary. *See* Local Rule 7(c).

## II.    PROCEDURAL HISTORY

On October 4, 2024, Communication Enhancement filed an amended complaint (Doc. 11) against defendants alleging claims of breach of contract (Count I), intentional interference with contract (Count II), unjust enrichment (Count III) and declaratory judgment (Count IV) arising out of the Trust's alleged failure to honor a contractual right

of first refusal provision before selling leased real estate to the Hoppers as part of a larger tract. Communication Enhancement asserts federal subject matter jurisdiction under 28 U.S.C. § 1332 based on diversity of citizenship. Doc. 11 at 2. Defendants filed an amended answer (Doc. 16) denying the claims, asserting various affirmative defenses and alleging counterclaims of breach of contract (Count 1), for quiet title (Count 2) and for declaratory judgment/reformation (Count 3). Trial is scheduled to begin May 26, 2026.

## III. RELEVANT FACTS

The following facts are undisputed except as noted otherwise. Rick Hopper is a Tama County farmer and was a long-time tenant of Irma Kucera prior to her passing. Doc. 56-1 at 1. After Kucera's death, Hopper continued to farm the property, which had been transferred to the Trust. *Id.* The property consists of approximately 110 tillable acres. *Id.* at 2. In 2001, engineers performed a survey to identify an appropriate location for a cell tower and associated access and easements. *Id.* The survey identified approximately 0.6 total acres as the "Lease Area."

In 2001, Kucera and Richland Telecom Towers A, LLC, entered into a Ground Lease Agreement for the Lease Area, which was called the Premises, and will be referred to as such herein. The Ground Lease Agreement had an initial term of 15 years and provided the Lessee with the option to renew for five successive, five-year periods. Doc. 57-1 at 3. The Agreement is currently in the second renewal period. *Id.*

The Ground Lease Agreement grants a right of first refusal to the Lessee[1] with respect to the Premises. *Id.* The right of first refusal provides that if the Trust receives a bona fide offer to purchase the Premises, the Trust is required to provide written notice of the offer to the Lessee along with a copy of the fully executed Purchase and Sale Agreement (the Proposed Contract). *Id.* Upon receipt of the Proposed Contract, the Lessee has 30 days to either exercise its right of first refusal to match the offer contained

---

[1] Communication Enhancement became the Lessee on March 14, 2001. Doc. 57-1 at 2.

in the Proposed Contract or waive its right of first refusal. *Id.* If the Lessee elects to exercise the right of first refusal, it must provide to the Trust within the 30-day period an agreement to purchase the Premises upon the same terms and conditions as the Proposed Contract. *Id.*

When the Trustees decided to sell the farm, they asked Hopper whether he would be interested in buying it. Doc. 56-1 at 3. On January 6, 2022, Hopper provided a written offer of $750,000 to the Trust for the entire property, including the Premises. The offer provided a deadline of January 15, 2022, for the Trust to respond. The Trustees timely accepted the offer. *Id.* at 4. Written notice and a copy of the offer was not provided to Communication Enhancement before acceptance. Doc. 57-1 at 4. The sale closed on either March 28, 2022, or April 1, 2022,[2] and a Trustee Warranty Deed was delivered to the Hoppers and recorded in the Tama County Recorder's Office.

On April 6, 2022, Communication Enhancement requested a copy of the deed from the attorney who represented the Trust and the Hoppers in the transaction. On May 18, 2022, the attorney wrote that it "[l]ooks like the title examiner simply missed the right of first refusal language." *Id.* at 5. In subsequent correspondence dated June 20, 2022, he admitted that the agreement between the Trust and the Hoppers did not memorialize an allocation of the purchase price between the farm real estate and the Premises subject to the Ground Lease Agreement. *Id.* at 5-6. After learning of the omission concerning the right of first refusal, the defendants attempted to resolve the issue. Doc. 56-1 at 5.

The Hoppers and Trustees executed a Memorandum of Sale on February 22, 2023,[3] for purposes of the Hoppers identifying what amount of the total purchase price from the property they allocated in their offer to the leased Premises - $225,000. *Id.*;

---

[2] The parties provide different dates in their statements of fact, which neither disputes. *See* Doc. 57-1 at 4, ¶ 18; Doc. 56-1 at 4, ¶ 14.

[3] The Memorandum of Sale is dated March 28, 2022. *See* Doc. 54-3 at 58.

Doc. 57-1 at 7. The Memorandum of Sale also authorized the Hoppers to contact Communication Enhancement to demand exercise or waiver of the right of first refusal. Doc. 56-1 at 5. In a letter dated August 14, 2023, the Hoppers provided notice of the Memorandum of Sale and requested the exercise or waiver of any right of first refusal. *Id.* at 6. Communication Enhancement responded through counsel by letter dated September 13, 2023, stating the Memorandum of Sale did not trigger the right of first refusal and was meaningless given that the sale had already been completed and the Trust had not fulfilled the requirements of the right of first refusal. *Id.*

Upon further review of the Ground Lease Agreement, the Hoppers realized their August 14, 2023, letter did not include a copy of the full purchase agreement for the property. *Id.* at 7. On June 7, 2024, they sent another letter to Communication Enhancement with notice and a request to exercise or waive any right of first refusal. Communication Enhancement did not respond. *Id.*

On July 26, 2024, the Hoppers provided Communication Enhancement with a waiver of right of first refusal consistent with the Ground Lease Agreement. *Id.* at 8. Communication Enhancement refused to sign and return the waiver form. *Id.* The July 26, 2024, letter also instructed Communication Enhancement to make lease payments to the Hoppers. *Id.* Communication Enhancement continued making payments to the Trust, which turned over the payments to the Hoppers. *Id.* at 8-9.

On October 2, 2024, the Hoppers issued a notice of default pursuant to the Ground Lease Agreement related to late payments and non-monetary defaults of sending payments to the Trust. *Id.* at 9; Doc. 57-1 at 7. The parties dispute whether Communication Enhancement was in default and, if it was, whether it cured any alleged defaults. Doc. 56-1 at 10; Doc. 57-1 at 7-8. The Hoppers allege damages of $3.66, consisting of the interest they allegedly would have earned had Communication Enhancement tendered

payments directly to the Hoppers.[4]  Doc. 60-1 at 3.

## IV.    SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case.  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, "the substantive law will identify which facts are material." *Id.*  Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248).  Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49.  The party moving

---

[4] Communication Enhancement notes that defendants have provided no evidence showing when the Hoppers actually received the rent payments as their evidence shows only when the payments were deposited into the Hoppers' bank account.

5

for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996). On cross motions for summary judgment, the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1998).

6

## V.    ANALYSIS

### A.    *Communication Enhancement's Motion*

Communication Enhancement moves for partial summary judgment on its claims of breach of contract and declaratory judgment (Counts I and IV) and on all of defendants' counterclaims.  I will address them in that order.

### 1.    *Communication Enhancement's Claims*

Communication Enhancement alleges the undisputed facts show that the Trust breached the right of first refusal and requests that the court order specific performance requiring the Trust to offer the leased Premises to Communication Enhancement for $95,000.  They assert money damages are inadequate and returning the leased Premises back to the Trust would result in the Hoppers allocating the same price for the Premises that they offered after the sale of the property.

Defendants argue Communication Enhancement was provided a sufficient opportunity to exercise its right of first refusal, despite that it was offered post-closing.[5] They dispute Communication Enhancement's position that the alleged breach was incurable, arguing that a bona fide offer need not be equivalent to market valuation opinions and that Communication Enhancement cannot obtain specific performance at fair market value based on Iowa law.  Finally, they argue that the opinion of

---

[5] In their own motion for summary judgment, defendants argue Communication Enhancement lacks a contractual right to bring suit as it did not provide a notice of default to the Trust and therefore, failed to satisfy a condition precedent to filing this action.  Doc. 53 at 2.  I find this to be a non-issue because (1) the Trust had constructive notice through its attorney, to whom Communication Enhancement reached out about the right of first refusal approximately five days after closing and (2) any breach was incurable as the Trust no longer owned the Property at that point.  While the communication to the attorney may not have precisely followed the terms of the Ground Lease Agreement for providing notice, only substantial compliance is required.  *See Homeland Energy Solutions, LLC v. Retterath*, 938 N.W.2d 664, 700-01 (Iowa 2020) (explaining that substantial performance does not excuse the nonoccurrence of an express condition precedent only when that condition precedent is necessary to the formation of a contract and that substantial compliance with contract terms is otherwise generally sufficient).

Communication Enhancement's expert, Isaac Klemish, is inadmissible because he used an unreliable methodology to appraise the Premises.

To prevail on a breach of contract claim under Iowa law,[6] a plaintiff must prove:

(1) the existence of a contract; (2) the terms and conditions of the contract; (3) that [plaintiff] has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998) (citing *Iowa-Illinois Gas & Elec. Co. v. Black & Veatch*, 497 N.W.2d 821, 825 (Iowa 1993)). A party breaches a contract when, without legal excuse, the party fails to perform any promise that forms a whole or a part of the contract. *Id.* (citing *Magnusson Agency v. Public Entity Nat'l Co. Midwest*, 560 N.W.2d 20, 27 (Iowa 1997)).

The first two elements are not in dispute. The Right of Refusal provision in the Ground Lease Agreement provides as follows:

22. **Right of First Refusal**.

If Lessor receives a bona fide offer to purchase the Premises, Lessor shall provide written notice of same to Lessee. Said notice shall include a copy of the fully executed Purchase and Sale Agreement (the "Proposed Contract"). Within thirty (30) days of the receipt of the Proposed Contract, Lessee shall either exercise or waive its right of first refusal to match the offer contained in the Proposed Contract. If Lessee elects to exercise its right of first refusal, Lessee shall within thirty (30) days of receipt of the Proposed Contract deliver to Lessor an

agreement to purchase the Premises upon the same terms and conditions contained in the Proposed Contract; provided, however, Lessee shall have sixty (60) days from the date Lessee's agreement to purchase is signed by Lessor to close on the purchase and sale of Premises. If Lessee fails to exercise or waive its right of first refusal within said thirty (30) day period of time after receipt the Proposed Contract, the Lessee's right of first refusal shall deemed to have been waived and upon written request Lessee shall furnish a certificate of waiver. Subsequent to such waiver, the Lessor may sell the Premises without any modification or amendment to the basic terms of the Proposed Contract. If any changes or modifications are made to the Proposed Contract, the revised Proposed Contract will be resubmitted to Lessee for re-consideration of its exercise of the right of first refusal granted pursuant to this paragraph.

---

[6] The Ground Lease Agreement provides it "shall be governed by the laws of the state in which the Property is located." Doc. 54-3 at 35. The Property is located in Tama County, Iowa. Doc. 54-3 at 28.

Doc. 54-3 at 34-35. The Ground Lease Agreement also provides the following as to default:

> 13. **Default.**
>
>    No event of default (a "Default") shall be deemed to have occurred hereunder unless either party, after notice from the other party in accordance with Paragraph 15, (a) fails to pay any monetary obligation when due and does not cure such failure within ten (10) days after such notice or (b) commits a material breach of its non-monetary obligations under this Ground Lease and fails within thirty (30) days after such notice thereof to cure or commence curing the breach and diligently pursue such cure to its completion in not more than sixty (60) days after such notice. Upon the occurrence of a Default as set forth in the preceding sentence, the non-defaulting party shall have the right to terminate this Ground Lease after ten (10) days notice to the other party in accordance with Paragraph 15, provided the Default is not cured within said ten-day period.

*Id.* at 32.

Both parties cite *Myers v. Lovetinsky*, 189 N.W.2d 571 (Iowa 1971), as the primary authority for the issue at hand. In *Myers*, the landlords owned a 94-acre farm with a half-acre leased to tenants. That lease gave the tenants a preferential right to purchase the leased premises. *Myers*, 189 N.W.2d at 573. The landlords provided the tenants notice in writing that buyers had offered to buy the leased premises for $20,000 cash. In reality, the buyers had not offered to buy the leased premises for $20,000 cash, but to buy the entire farm on contract for $1,750 per acre. *Id.* at 574. The tenants responded that they would exercise their preferential right to buy the leased premises, but not for $20,000, as they did not believe that offer was in accordance with the terms and conditions of the lease. *Id.*

The sale was completed later that month with the buyers agreeing to sell the leased premises to the tenants for no more than $20,000. The tenants stopped paying rent a few months later. The trial court determined that the tenants could exercise their preferential right for "such proportion of $1,750 as the demised premises bear to one acre in size" and the buyers appealed. *Id.* The Iowa Supreme Court concluded that the sale of the entire farm for a single price of $1,750 per acre breached the tenants' preferential right to buy the leased premises because the sale did not separately price the leased premises

9

and the rest of the farm, observing that the notice to tenants of the buyers' purported offer to buy the demised premises for $20,000 cash was false. *Id.*

With regard to relief, the Court noted that "when a landlord sells a whole farm including demised premises without separately pricing the demised premises and the rest of the farm, the price of the demised premises alone has not become fixed." *Id.* at 576. It cannot be based on a portion of the whole price in proportion to the acreage because the demised premises may have a "considerably different value from a parcel of the same size elsewhere in the farm." *Id.* The Court agreed with the majority view that the tenant cannot obtain specific performance but "can obtain relief which will maintain the status quo ante until the end of the lease term, when the preferential right expires." *Id.* It stated this could be accomplished by "enjoining the landlord from conveying the demised premises to the purchaser, or, if the landlord has already conveyed, by requiring the purchaser to reconvey those premises to the landlord." *Id.* Because the tenants in *Myers* waited to sue until their lease expired, the court determined their preferential right had expired and they were not entitled to relief. *Id.* at 577.

This case differs from *Myers* in that (1) no offer was presented to Communication Enhancement prior to sale of the entire property and (2) the lease is ongoing. It is similar in that the Trust's post-sale attempt to cure the breach included an "offer" to buy the leased Premises that was not a bona fide offer because, aside from not being presented before the sale, it was fabricated out of the true offer for the entire acreage, which did not separately price the leased Premises. *Myers* clearly holds this constitutes a breach of the right of first refusal. It is undisputed the Trust sold the entire Property without first notifying Communication Enhancement and then attempted to cure the breach by fabricating a purchase price for the leased Premises out of the sale price for the entire property.

I agree with Communication Enhancement that under these circumstances, the breach is incurable because there was no determination of the value of the leased Premises

10

in the bona fide offer made for the purchase of the entire Property, and thus, no fixed price. It cannot be made after-the-fact for the reasons discussed in *Myers*:

> Upholding a device such as was attempted here by the landlords and the purchasers would permit persons occupying those positions to perpetrate wrongs on tenants. Consider the possibilities. If certain demised premises constituting a half-acre were worth $1,000 and a landlord and a purchaser wanted to eliminate a tenant, they could simply provide that the landlord should offer those premises to the tenant for $20,000 – although the purchaser was buying the demised premises as part of a larger tract at $1,750 per acre for the whole. The only way the purchaser could eliminate the tenant would be by actually buying or offering to buy the demised premises for a separate price of $20,000. The tenant would then be entitled to his first refusal at that figure. If the tenant did not buy, he would be out of the picture.

*Myers*, 189 N.W.2d at 575.

With regard to whether Communication Enhancement performed all the terms and conditions required of it under the contract, defendants argue that it failed to tender lease payments to the Hoppers. As I will address in greater detail below in discussing defendants' counterclaims, this does not amount to a material breach of the Ground Lease Agreement and, in any event, occurred after the breach of right of first refusal such that it would not excuse the Trust's performance under the contract.

That leaves the issue of the appropriate remedy. In its reply, Communication Enhancement clarifies that its request is that the leased Premises be transferred back to the Trust, with the requirement that the Trust offer the Premises to Communication Enhancement at a reasonable price set by the court rather than requiring the Hoppers to sell the Premises directly to Communication Enhancement at a price set by the court. It contends that this type of specific performance is necessary based on the unique circumstances and because compensatory damages cannot be determined with reasonable certainty. It relies on *Pistol Ltd. Co. v. Green Family Flooring, Inc.*, No. 22-0126, 2023 WL 2905165, at *4 (Iowa Ct. App. Apr. 10, 2023), noting that it presented a similar issue as to *Myers* but, because the lease had not expired in that case, the Iowa Court of

Appeals remanded the case back to the district court to determine the proper remedy. Communication Enhancement emphasizes the following footnote from *Pistol Ltd.*, which was cited for the proposition that "[a] package deal cannot defeat the right of first refusal":

> A lengthy discussion of the right of first refusal in association with package deals is found in a law review note, which concludes:
>
> > In terms of fairness and efficiency, the most appropriate default rule is to require an owner who receives an acceptable offer for a package deal to provide the rightholder with an opportunity to purchase the burdened portion of the package at a reasonable price. If the owner fails to do so, the rightholder should be entitled to enforce her privilege by purchasing the burdened property at a price determined by the court to be fair and reasonable.

*Pistol Ltd. Co.*, 2023 WL 2905165, at *3, n. 5 (quoting Bernard Daskal, Note, *Rights of First Refusal and the Package Deal*, 22 Fordham Urb. L.J. 461, 501 (1995)).

Defendants argue that specific performance at fair market value is precluded by *Myers*. *See Myers*, 189 N.W.2d at 576 ("We think that to grant specific performance of the demised premises for their market value is to rewrite the tenant's preferential right. That right requires the landlords here to sell to the tenants 'at the same price for which the Lessor would be willing to sell to any other person,' not 'at the market value.' We hold that in these situations the tenant's relief is limited to maintaining the status quo ante with respect to the demised premises for the rest of the term of the lease."). In any event, defendants argue that opinion of Communication Enhancement's expert is inadmissible due to its reliance on unreliable methodology to appraise the Premises. It notes that Klemish could not find any cell-tower transactions comparable to the tower here, so used wind turbine leases instead, which defendants note involve not only different industries, but distinct products and risks, and thus, distinct markets.

As defendants observe, *Pistol Ltd.* was not remanded to the district court with an instruction that the premises be sold to the lessee at a price determined by the court to be

12

fair and reasonable. Rather, it was remanded for "a determination of a proper remedy for [the lessee]" and cited *Myers*. *See Pistol Ltd. Co.*, 2023 WL 2905165, at *4. *Myers* discussed various remedies, noting that if the landlord has already conveyed the premises, the majority rule is to require "the purchaser to reconvey those premises to the landlord." *Myers*, 189 N.W.2d at 576. It specifically noted the minority view (two jurisdictions at that time) would grant the tenant specific performance based on the market value of the demised premises as found by the court. *Id.* Communication Enhancement is asking for something between these two views. It agrees the Premises should be conveyed back to the Trust, but argues court intervention is necessary because "the Trust and the Hoppers may set the price at any amount they please because no price was allocated to the leased Premises prior the sale of the Property." Doc. 60 at 2-3.

*Myers* instructs that the proper remedy is to require the Hoppers to reconvey the Premises back to the Trust. *Myers*, 189 N.W.2d at 576 (instructing that to maintain the status quo ante means "enjoying the landlord from conveying the demised premises to the purchaser, or, if the landlord has already conveyed, by requiring the purchaser to reconvey those premises to the landlord."). As for what happens after that, *Myers* is silent except to state that the status quo ante should continue until the end of the lease period. *Id.* ("We hold that in these situations the tenant's relief is limited to maintaining the status quo ante with respect to the demised premises for the rest of the term of the lease."). In this case, the lease may be renewed up to three more five-year periods. *See* Doc. 54-3 at 30 (providing the initial term of the Ground Lease Agreement was 15 years with the lessee's option to renew for five successive five-year renewal terms upon the same terms and conditions of the initial 15-year term); Doc. 57-1 at 3 (agreeing the Ground Lease Agreement is in the second five-year renewal term). Defendants make no argument as to what should happen after reconveyance to the Trust, arguing only that Communication Enhancement cannot obtain specific performance at fair market value.

Of course, any subsequent sale of the leased Premises must comply with the Ground Lease Agreement and Communication Enhancement's right of first refusal.

13

Communication Enhancement's concern is that "[w]ithout court intervention, the Trust and Hoppers may set the price at any amount they please because no price was allocated to the leased Premises prior to the sale of the Property." Doc. 60 at 2-3. Therefore, it requests that "[o]nce the leased Premises is transferred back to the Trust, the Trust must then offer the Premises to [Communication Enhancement] at a reasonable price set by this Court consistent with [Communication Enhancement]'s right of first refusal." *Id.* at 2.

Courts that have ordered the demised property returned to the lessors have rejected a request to order the subsequent conveyance to the lessee at a price set by the court. *See L.E. Wallach, Inc. v. Toll*, 113 A.2d 258, 261 (Penn. 1955) (directing that the property be restored to the lessors "and not again conveyed by them except to the plaintiff or to a purchaser whose offer, if rejected by the lessee, is thereupon accepted by the lessors" and finding "untenable" the lessee's request "for an order directing that the demised premises be conveyed to it at such price as the court shall deem fair and equitable."); *C&B Wholesale Stationery v. S. De Bella Dresses, Inc.*, 349 N.Y.S.2d 751, 753-54 (N.Y. App. Div. 1973) (concluding that when the sale of a larger parcel, including the leased premises, has already been sold, "it is necessary to order a conveyance of title to the lease premises back to the lessor and to enjoin a further sale of the lease premises by the lessor to anyone other than plaintiff without giving the latter an opportunity to meet any bona fide offer of purchase thereof" and rejecting a request for specific performance since the lessor had no intention to sell only the leased premises). I agree with this approach and decline to provide any relief beyond the reconveyance, as such relief would border on the type of specific performance rejected in *Myers*. *See Myers*, 189 N.W.2d at 576 ("We think that to grant specific performance of the demised premises for their market value is to rewrite the tenant's preferential right.").

In summary, Communication Enhancement is entitled to summary judgment on its claims of breach of contract (Count I) and declaratory judgment (Count IV), as the sale of the entire acreage, including the leased Premises, for $750,000 violated

14

Communication Enhancement's right of first refusal. In accordance with *Myers*, the leased Premises must be reconveyed to the Trust.

### 2. *Defendants' Counterclaims*

Defendants' counterclaims of quiet title for declaratory judgment (Counterclaim Counts 2 and 3) are moot based on the ordered reconveyance of the leased Premises back to the Trust. Defendants' breach of contract claim (Counterclaim Count 1) relates to Communication Enhancement's failure to tender its lease payments directly to the Hoppers after they provided notice on July 26, 2024, of the new address to send payments. Defendants assert this constituted a material breach of the Ground Lease Agreement and resulted in damages of $3.66 to the Hoppers based on interest they would have incurred had the payments been tendered directly to the Hoppers instead of through the Trust.[7] Defendants maintain that even if Communication Enhancement's right of first refusal was breached, Communication Enhancement chose to stand by the contract and was therefore obligated to continue making rent payments according to the Ground Lease Agreement. The Ground Lease Agreement required Communication Enhancement to tender payments to the "Lessor," which they contend was the Hoppers when they received an assignment of the Lease in April 2022 pursuant to the purchase agreement. *See* Doc. 54-3 at 40 (stating "[s]ale includes assignment of lease with the cell tower company to the Buyer."). Defendants argue they notified Communication Enhancement of where to send future lease payments on July 26, 2024, and of its breach on October 2, 2024. They contend Communication Enhancement refused to cure the default by continuing to send payments to the Trust.

---

[7] As noted by Communication Enhancement, the Trust does not allege any damages. Doc. 54-1 at 18, n. 4. I agree that any breach of contract claim by the Trust fails a matter of law as it does not purport to be the Lessor to the Ground Lease Agreement after April 2022 and does not allege any damages.

Communication Enhancement argues it is entitled to summary judgment on defendants' breach of contract counterclaim because any purported assignment from the Trust to the Hoppers was invalid based on the breach of Communication Enhancement's right of first refusal. Further, it asserts there was never an executed assignment of the lease from the Trust to the Hoppers.[8] Even if the purported assignment in the purchase agreement was effective, Communication Enhancement asserts that it nevertheless fulfilled its obligations under the Ground Lease Agreement, which required payment to the Lessor at 141 5th Avenue, Marion, Iowa, 52322, and is where Communication Enhancement has sent its payments. Communication Enhancement argues that because the Hoppers waited until July 26, 2024,[9] to inform it where to send lease payments and there was never any executed amendment/assignment of the lease, the doctrines of estoppel, waiver and acquiescence should prevent defendants from unfairly asserting a right to declare default after allowing the alleged noncompliance for 27 months after the sale of the Property.

Section 237 of the Restatement (Second) of Contracts provides: "[Subject to an exception not applicable here], it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time." Restatement (Second) of Contracts § 237 (1981). As explained in the comments, "a material failure of performance, including defective performance as well as an absence of performance, operates as the non-occurrence of a condition." *Id.* (comment a). The

---

[8] In its reply, Communication Enhancement submitted a statement of additional facts (Doc. 60-2) related to this argument and in response to defendants' resistance. Defendants have not filed a response. In any event, defendants rely on the language in the purchase agreement (Doc. 53-3 at 23-28) that "[s]ale includes assignment of lease with the cell tower company to the Buyer."

[9] Communication Enhancement notes that in two communications prior to July 26, 2024, defendants acknowledged that an amendment to the Ground Lease Agreement was required "to update the lessor's information for purposes of lease payments." Doc. 53-3 at 44, 49.

non-occurrence of a condition has two possible effects: "It prevents performance of those duties from becoming due, at least temporarily, and it discharges those duties if it has not been cured during the time in which performance can occur." *Id.*

The Trust's breach of Communication Enhancement's right of first refusal was material. *See Dolly Investments, LLC v. MMG Sioux City, LLC*, 984 N.W.2d 168, 174 (Iowa 2023) (noting the five factors courts consider in determining materiality of a breach based on the Restatement (Second) of Contracts § 241 are whether the breach (1) deprives an injured party of a reasonably expected benefit, (2) cannot be adequately remedied, (3) produces a forfeiture in the nonperforming party, (4) is not likely to be cured by the nonperforming party and (5) results from the nonperforming party's failure to comply with standards of good faith and fair dealing). Therefore, Communication Enhancement would have been justified in suspending its payments under the lease.

However, Communication Enhancement opted to continue receiving the benefits under the lease, such that it was required to perform its part of the bargain by continuing to make rental payments in accordance with the Ground Lease Agreement. *See Ryan Data Exchange, Ltd v. Graco Inc.*, No. 4:14-cv-198, 2017 WL 5957205, at *5 (S.D. Iowa Jan. 30, 2017) ("when a party breaches a contract, the nonbreaching party has a choice of 'two inconsistent rights – it can either elect to allege a total breach, terminate the contract and bring an action or, instead, elect to keep the contract in force, declare the default only a partial breach, and recover those damages caused by that partial breach.'" (quoting 13 Richard A. Lord, *Williston on Contracts*, § 39:32 (4th ed. 2000))). "[T]he nonbreaching party, by electing to continue receiving benefits under the agreement, cannot then refuse to perform its part of the bargain." *Id.* The Ground Lease Agreement provided: "Rent payments shall be payable to Lessor at the address set forth above or at such other address as Lessor shall notify Lessee in accordance with Paragraph 15." Doc. 54-3 at 30. There is no dispute that the Hoppers' July 26, 2024, letter complied with the notice requirements of paragraph 15. *See id.* at 33. Communication Enhancement cites no legal authority as to why the assignment in the purchase agreement

17

was ineffective or why an amendment to the Ground Lease Agreement was required when it clearly allows the Lessor to instruct the Lessee where to send rental payments, at any time and for any reason, so long as they provide the required notice.[10] Communication Enhancement has not demonstrated that the Hoppers' breach of contract claim fails as a matter of law.[11] As such, Communication Enhancement is entitled to summary judgment only as to defendants' counterclaims to quiet title and declaratory judgment/reformation and only as to the Trust and Trustee defendants on the breach of contract counterclaim.

## B.    *Defendants' Motion*

Defendants seek summary judgment on all of Communication Enhancement's claims. While I have already addressed the breach of contract claim and declaratory judgment, I will consider defendants' motion as to Communication Enhancement's other two claims – intentional interference with contract and unjust enrichment.

### 1.    *Intentional Interference with Contract*

An intentional interference with contract claim requires a plaintiff to show: "(1) plaintiff had a contract with a third-party; (2) defendant knew of the contract; (3) defendant intentionally and improperly interfered with the contract; (4) the interference caused the third-party not to perform, or made performance more burdensome or expensive; and (5) damage to the plaintiff resulted." *Green v. Racing Ass'n of Cent. Iowa*, 713 N.W.2d 234, 243 (Iowa 2006) (quoting *Gibson v. ITT Hartford Ins. Co.*, 621

---

[10] This is why Communication Enhancement's arguments of estoppel, waiver and acquiescence also fail. The Hoppers are not alleging noncompliance with the Ground Lease Agreement during the 27 months after the sale and before their notice. Rather, they are alleging a breach after their notice on July 26, 2024, when they instructed Communication Enhancement, in accordance with the rent and notice provisions of the Ground Lease Agreement, where to send rental payments.

[11] For reasons that will be discussed in Section VI, infra, that claim will be dismissed without prejudice.

18

N.W.2d 388, 299 (Iowa 2001)).  Factors used to determine if challenged conduct is improper include: (1) the nature of the conduct; (2) the defendant's motive; (3) the interests of the party with which the conduct interferes; (4) the interest sought to be advanced by the defendant; (5) the social interests in protecting the freedom of action of the defendant and the contractual interests of the other party; (6) the nearness or remoteness of the defendant's conduct to the interference and (7) the relations between the parties.  *Id.* at 244.  The Iowa Supreme Court has cited the following from the Restatement (Second) of Torts regarding this element:

> Intent alone . . . may not be sufficient to make the interference improper, especially when it is supplied by the actor's knowledge that the interference was a necessary consequence of his conduct rather than by his desire to bring it about.  In determining whether the interference is improper, it may become very important to ascertain whether the actor was motivated, in whole or in part, by a desire to interfere with the other's contractual relations.  If this was the sole motive the interference is almost certain to be held improper.
>
>  . . . [I]f there is no desire at all to accomplish the interference and it is brought about only as a necessary consequence of the conduct of the actor engaged in for an entirely different purpose, his knowledge of this makes the interference intentional, but the factor of motive carries little weight toward producing a determination that the interference was improper.

*Berger v. Cas' Feed Store, Inc.*, 543 N.W.2d 597, 599 (Iowa 1996) (quoting Restatement (Second) of Torts § 767 cmt. d).

The Trust argues it cannot be held liable because it was a party to the contract.  *See Jones v. Lake Park Care Ctr., Inc.*, 569 N.W.2d 369, 377 (Iowa 1997) ("A party to a contract cannot be liable for tortious interference with that contract.  Only a third-party, separate from the contracting parties, can be liable for such a tort.").  The Hoppers argue they cannot be held liable because there is no evidence of intentional and improper interference, that they caused the non-performance by the Trust or damages.  Communication Enhancement argues there are fact issues that preclude summary

judgment based on its civil conspiracy theory of liability – that the Trust acted in concert with the Hoppers to circumvent Communication Enhancement's right of first refusal.

Aside from the structure of the transaction and the purchase agreement, Communication Enhancement relies on deposition testimony from Perkins that she was aware of Communication Enhancement's right of first refusal prior to selling the Property, *see* Doc. 53-3 at 72, and Hopper's deposition testimony that he was also aware of the right of first refusal and spoke to Perkins about it. *Id.* at 85-86, 88. This evidence is insufficient to generate an issue of fact as to either Communication Enhancement's civil conspiracy theory of liability or its intentional interference claim. Perkins' testimony is that her understanding of the right of first refusal was that "it was for selling the lease, not the land." Doc. 53-3 at 73-74. She also indicated that prior to closing, she indicated to Hopper there was a right of first refusal but "wasn't sure what it meant exactly" and that "counsel needed to determine that." *Id.* at 78.

Hopper's testimony reveals similar misunderstandings, as he relied on Perkins' knowledge of the right of first refusal. Hopper testified that Perkins indicated there was a right of first refusal and based on that conversation, he understood it applied to part of the farm but did not prevent someone from buying the entire 112 acres. *Id.* at 85-86, 90. He did not have a copy of the Ground Lease Agreement and assumed that an attorney for the title examining company or the attorney representing the parties would review it. *Id.* at 87. This evidence is insufficient to generate a genuine issue of material fact as to (1) any collusion by the Trust and Hoppers to support a civil conspiracy theory of liability[12] or (2) that the Hoppers intentionally and improperly interfered with the contract and caused the Trust not to honor the right of first refusal. Rather, it demonstrates that the parties had knowledge of the right of first refusal prior to closing but did not understand what it meant and were relying on counsel or the title company to review it.

---

[12] Aside from its civil conspiracy theory of liability, this claim fails as a matter of law against the Trust as it is a party to the contract at issue. *See Jones*, 569 N.W.2d at 377.

There is no evidence of any improper motive or agreement between the parties to thwart Communication Enhancement's right of first refusal.

To the extent Communication Enhancement also relies on backdated Memorandum of Sale, this also fails to generate a genuine issue of material fact as to any intentional or improper interference or causation because the record demonstrates it was created after the sale had already taken place. *See* Doc. 57-1 at 7 (in which defendants admit the Memorandum of Sale was drafted by counsel on February 22, 2023). For these reasons, defendants are entitled to summary judgment on Communication Enhancement's claim of intentional interference with contract.

### 2.    *Unjust Enrichment*

Under Iowa law, "the existence of a contract precludes the application of the doctrine of unjust enrichment." *Johnson v. Dodgen*, 451 N.W.2d 168, 175 (Iowa 1990) (citing *Smith v. Harrison*, 325 N.W.2d 92, 94 (Iowa 1982) and 66 Am. Jur. 2d, *Restitution and Implied Contracts*, § 6 at 949 (1973)); *see also Bass v. J.C. Penney Co.*, 880 N.W.2d 751, 764 (Iowa 2016) ("Because there is a contract between the consumer and J.C. Penney for the sale of goods, the claim for unjust enrichment fails as a matter of law.").

Defendants seek summary judgment on Communication Enhancement's unjust enrichment claim because they argue the Ground Lease Agreement governs the full breadth of the parties' rights concerning the right of first refusal. Communication Enhancement argues that the Trust and the Hoppers were enriched by the sale of the Property that violated Communication Enhancement's right of first refusal. It contends that this claim is "an equitable remedy available to [Communication Enhancement] in the event there is no express contract between the parties due to the Trust's breach of [Communication Enhancement]'s right of first refusal." Doc. 56 at 20.

It is undisputed there is an express contract between the Trust and Communication Enhancement. As such, Communication Enhancement's claim as to the Trust fails as a

21

matter of law.  *See Johnson*, 451 N.W.2d at 175.  With regard to the Hoppers, Communication Enhancement argues they retained the leased Premises they were not otherwise immediately entitled to if the right of first refusal had been honored and Communication Enhancement offered to purchase the Premises on the same terms offered by the Hoppers (had a price been separately allocated in the first place).  Communication Enhancement seeks this remedy "in the alternative."  Doc. 56 at 18.  Because relief has been provided through its breach of contract claim and the Hoppers ordered to reconvey the leased Premises to the Trust, the claimed unjust enrichment by the Hoppers is now moot.  As such, summary judgment on this claim is appropriate as to all defendants.

## VI.  SUPPLEMENTAL JURISDICTION

In commencing this action, Communication Enhancement invoked the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), alleging that the plaintiff and the defendants are citizens of different states and the amount of controversy, exclusive of interest and costs, exceeds $75,000.  Doc. 1 at 2.  Those allegations have not been challenged and there is no doubt that this court had original subject matter jurisdiction over Communication Enhancement's claims.

As a result of this order, however, the only remaining claim in this case is the breach of contract counterclaim asserted by defendants Richard and Jodi Hopper (Counterclaim Count 1).  The amount in controversy as to that claim is $3.66.  Doc. 60-1 at 3.  Because the amount in controversy does not exceed $75,000, that claim could not have been brought in federal court as a stand-alone claim.  When a federal district court has original jurisdiction over a claim, it also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  However, once the court has disposed of all claims for which original jurisdiction existed, the court may decline to exercise supplemental jurisdiction over any remaining claims.  28 U.S.C. § 1367(c).

22

In deciding whether to exercise supplemental jurisdiction, the court must consider such factors as judicial economy, convenience, fairness and comity. *Starkey v. Amber Enterprises, Inc.*, 987 F.3d 758, 765 (8th Cir. 2021). Having considered these factors, I decline to exercise supplemental jurisdiction over the Hoppers' de minimis breach of contract claim. That claim will be dismissed without prejudice to being re-filed in state court.

## VII.   CONCLUSION

For the reasons stated herein:

1.      Communication Enhancement's motion (Doc. 54) for partial summary judgment is **granted in part and denied in part**. It is **granted** as to its claims of breach of contract (Count I) and declaratory judgment (Count IV) and as to defendants' counterclaims to quiet title and declaratory judgment/reformation (Counterclaim Counts 2 and 3). It is also **granted** as to any breach of contract counterclaim by defendants Irma M. Kucera Living Trust and Trustees Natalie Mass and Lorna Perkins. The motion is **denied** as to defendants Richard and Jodi Hoppers' breach of contract counterclaim (Counterclaim Count 1).

2.      Defendants' motion (Doc. 53) for summary judgment is **granted in part** and **denied in part**. It is **denied as moot** as to Communication Enhancement's claims of breach of contract and declaratory judgment (Counts I and IV). It is **granted** as to Communication Enhancement's claims of intentional interference with contract and unjust enrichment (Counts II and III).

3.      Defendants Rick and Jodi Hopper are hereby **directed** to **reconvey** the leased Premises back to the Irma M. Kucera Living Trust. Upon such reconveyance, the parties are free to enter into whatever additional transactions they see fit, consistent with the Ground Lease Agreement and Communication Enhancement's right of first refusal.

4. This court declines to exercise supplemental jurisdiction over the Hoppers' breach of contract counterclaim against Communication Enhancement (Counterclaim Count 1). As such, that claim is **dismissed without prejudice**.

5. Judgment **shall enter** in favor of Communication Enhancement consistent with this order.

6. Because this order resolves and/or disposes of all claims pending in this case, no claims remain for trial and the Clerk of Court shall **close this case**.

**IT IS SO ORDERED** this 28th day of January, 2026.

_____
Leonard T. Strand
United States District Judge

24